UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOURNEE MURPHY,           ) | |
|         ) | |
|     Plaintiff,       ) | Case: 1:26-cv-02974 |
|         ) | |
|     v.          ) | |
|         ) | |
| UNIVERSAL PROTECTION SERVICE,     ) | |
| LLC d/b/a ALLIED UNIVERSAL,     ) | |
|         ) | Jury Trial Demanded |
|     Defendant.     ) | |

## COMPLAINT

Plaintiff, Journee Murphy ("Plaintiff"), by and through the undersigned counsel, hereby files this Complaint against Universal Protection Service, LLC d/b/a Allied Universal ("Defendant"), and in support states as follows:

## NATURE OF PLAINTIFF'S CLAIMS

1. This lawsuit arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII"), and the Illinois Human Rights Act, 775 ILCS 5/ ("IHRA"), seeking redress for Defendant's sex-based discrimination, and retaliation for engaging in a protected activity in violation of Title VII and the IHRA.

2. This lawsuit also arises under the Pregnant Workers Fairness Act of 2023, as amended, 42 U.S.C. § 2000gg *et seq*. ("PWFA"), and the Illinois Human Rights Act, 775 ILCS 5/2-102 ("IHRA"), seeking redress for Defendant's failure to accommodate Plaintiff's pregnancy, and for Defendant's retaliation against Plaintiff for engaging in a protected activity under the PWFA and the IHRA.

3. This lawsuit further arises under the Pregnancy Discrimination Act of 1978 ("PDA"), 42 U.S.C. § 2000e *et seq*., seeking redress for Defendants' pregnancy-based

discrimination, and retaliation against Plaintiff for engaging in a protected activity under the PDA.

## JURISDICTION AND VENUE

4. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331.

5. Venue of this action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. §1391(b) insofar as Defendant operates and transacts business in this judicial district and the events giving rise to Plaintiff's claims occurred within this District.

6. This Court has pendent jurisdiction and supplementary jurisdiction of Counts II, IV, VI, and VIII through 28 U.S.C. §1367.

## ADMINISTRATIVE PREREQUISITES

7. All conditions precedent have occurred or been complied with.

8. A charge of employment discrimination was filed by Plaintiff with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights (Attached hereto as Exhibit "A").

9. Plaintiff received a Notice of Right to Sue from the EEOC (attached hereto as Exhibit "B").

10. Plaintiff filed this lawsuit within ninety (90) days of Plaintiff's receipt of the EEOC's Notice of Right to Sue.

## PARTIES

11. At all times relevant to the allegations of this Complaint, Plaintiff, Journee Murphy, was a natural person, over 18-years-of-age, who resided in Cook County, Illinois.

12. At all times relevant to the allegations of this Complaint, Defendant, Universal Protection Service, LLC d/b/a Allied Universal, was an LLC specializing in security solutions and services that was doing business in and for Cook County, Illinois, located at 10 S. Wacker Dr., Chicago, Illinois, 60606.

13.     Plaintiff was employed by Defendant as an "employee" within the meaning of 42 U.S.C § 2000e(f).

14.     During the applicable limitations period, Defendant has had at least fifteen employees, has been an "employer" as defined by Title VII, and has been engaged in an industry affecting commerce within the meaning of Title VII, 42 U.S.C. § 2000e(b).

**BACKGROUND FACTS**

15.     Plaintiff worked for Defendant as a security officer from in or around September 2024, until Plaintiff's unlawful termination on or about August 14, 2025.

16.     As a security officer, Plaintiff's duties included but were not limited to:

i.   Provide customer service to clients by carrying out security-related procedures, site-specific policies, and emergency response activities within an educational environment.

ii.  Respond to incidents and critical situations in a calm, problem-solving manner, assisting staff, students, and visitors as needed.

iii. Conduct regular and random patrols around the campus grounds and perimeter to help to deter unauthorized activity and promote a secure environment.

iv.  Observe and report any unusual activity, property damage, or maintenance issues encountered during patrols.

v.   Communicate clearly and professionally with campus personnel and visitors, providing assistance and directions as needed.

vi.  Document all incidents and security-related activities according to site procedures and Allied Universal policies.

vii. Support emergency response efforts by following established protocols and assisting first responders as required.

17.     During Plaintiff's employment with Defendant, Plaintiff was female and pregnant.

18.     Since at least May 15, 2025, through August 14, 2025, Defendant has subjected Plaintiff to different terms and conditions of employment than others not within Plaintiff's

protected class on the basis of Plaintiff's sex and pregnancy.

19.     At the beginning of Plaintiff's employment, she worked two 16-hour shifts per week and occasionally picked up additional hours if needed.

20.     Plaintiff working less than 40 hours per week was never an issue raised with Plaintiff by her employer.

21.     From on or about May 15, 2025, to June 29, 2025, Plaintiff was on medical leave due to a diagnosis of hyperemesis gravidarum, a severe pregnancy-related condition that caused persistent vomiting and required hospitalization.

22.     However, because Plaintiff had not yet been employed with the company for one year, the leave was officially classified as personal leave even though management knew it was medical in nature.

23.     On or about June 30, 2025, Plaintiff returned to work and was reassigned to overnight shifts, as her symptoms were more manageable during those hours.

24.     On or about July 6, 2025, Plaintiff submitted medical accommodation documentation to her manager, Wilbert Davis.

25.     The accommodation indicated that Plaintiff should not be required to stand for more than two hours and that she was able to sit for four to six hours per shift.

26.     Beginning on or about July 28, 2025, Plaintiff began calling out occasionally due to ongoing complications from her pregnancy.

27.     Around this time, Manager Wilbert Davis began expressing dissatisfaction, both with Plaintiff's reduced weekly hours (which were now under 40) and with the accommodation limiting Plaintiff's ability to stand for extended periods.

28.     Plaintiff reiterated that she was still capable of sitting for 4 to 6 hours per shift, as

4

documented.

29.     On or about August 8, 2025, Plaintiff informed Mr. Davis that working consecutive overnight shifts was becoming too physically demanding due to her condition.

30.     Plaintiff requested to reduce her schedule to approximately 24 hours per week or to be moved to shifts other than overnights.

31.     Mr. Davis responded that he could not accommodate Plaintiff's request and stated that Plaintiff should have notified him sooner.

32.     Plaintiff clarified that she was still willing and eager to work but needed either a reduced schedule or a change in shift times.

33.     Davis insisted that overnights were the only available option.

34.     Plaintiff agreed to try and continue working the scheduled week.

35.     On or about August 14, 2025, while Plaintiff was 21 weeks pregnant, she was terminated.

36.     The reason given was that Plaintiff had allowed an "unauthorized user" into the building.

37.     To Plaintiff's understanding, the individual in question presented what appeared to be an authorized tenant badge, and Plaintiff took the appropriate steps to verify their identity.

38.     Plaintiff's termination was less than a week after she requested reasonable accommodation that would not place an undue burden on Defendant.

39.     This reason for termination was pretextual and Plaintiff's termination was motivated by her pregnancy, medical condition, and related requests for reasonable accommodation.

40.     Ultimately, on or about August 14, 2025, Plaintiff was terminated on the basis of

Plaintiff's sex and pregnancy, and engaging in protected activity as described above.

41.    Plaintiff engaged in protected activity by disclosing her pregnancy.

42.    Plaintiff engaged in protected activity by requesting reasonable accommodation.

43.    Defendant did not engage in a meaningful interactive process regarding Plaintiff's request for accommodation.

44.    Defendant did not propose any alternative accommodation.

45.    Defendant did not discuss potential task redistribution or temporary modifications.

46.    Defendant did not propose any alternative accommodation.

47.    Temporary task adjustments were feasible within Defendants' operations.

48.    Plaintiff was retaliated against, and her employment was ultimately terminated for disclosing her pregnancy to Defendant and reasonably requesting accommodation in relation to her pregnancy.

49.    Plaintiff was targeted for termination because of her sex and pregnancy.

50.    Plaintiff suffered multiple adverse employment actions including but not limited to being terminated.

51.    Plaintiff met or exceeded Defendant's performance expectations during the entire duration of their employment.

52.    Plaintiff suffered multiple adverse employment actions including but not limited to being terminated.

53.    There is a basis for employer liability for the discrimination and retaliation that Plaintiff was subjected to.

54.    Additionally, there is a basis for employer liability for the failure to accommodate Plaintiff's request for accommodation related to her pregnancy.

6

55. Plaintiff can show that she engaged in statutorily protected activity –a necessary component of her retaliation claim, because Plaintiff disclosed her pregnancy and requested accommodations.

56. The temporal proximity between Plaintiff's disclosure of her pregnancy and request for accommodation and her termination, gives rise to a strong inference that the termination was motivated by her pregnancy and engagement in protected activity.

57. At all relevant times, Wilbert Davis was Plaintiff's manager, and managerial employees of Defendant have the authority to make and implement final employment decisions, including the authority to terminate Plaintiff's employment.

58. Accordingly, because the unlawful discrimination and retaliation were carried out by Plaintiff's manager acting within the scope of their employment, Defendant is strictly liable for the discriminatory conduct and termination decision.

**COUNT I**
**Violation of the Title VII of the Civil Rights Act of 1964**
**(Sex-Based Discrimination)**

59. Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

60. By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based on Plaintiff's sex and pregnancy, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. ("Title VII").

61. Plaintiff was a member of a protected class under Title VII, due to Plaintiff's sex and pregnancy.

62. Plaintiff was qualified for their position as a security officer.

63. Plaintiff met or exceeded performance expectations.

64. Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

65. Ultimately, Defendant terminated Plaintiff's employment on the basis of Plaintiff's sex and pregnancy.

66. Specifically, Plaintiff was terminated following her disclosure of her pregnancy and request for reasonable accommodation in relation to her pregnancy.

67. Defendant acted in willful and reckless disregard for Plaintiff's protected rights.

68. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation and loss of enjoyment of life.

**COUNT II**
**Violation of the Illinois Human Rights Act, 775 ILCS 5/**
**(Sex-Based Discrimination)**

69. Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

70. By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based of Plaintiff's sex and pregnancy, in violation of the Illinois Human Rights Act (775 ILCS 5/) ("IHRA").

71. Plaintiff is a member of a protected class under the IHRA, due to Plaintiff's sex and pregnancy.

72. Plaintiff was qualified for their position as a security officer.

73. Plaintiff met or exceeded performance expectations.

74. Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

75. Ultimately, Defendant terminated Plaintiff's employment on the basis of Plaintiff's sex and pregnancy.

76. Specifically, Plaintiff was terminated following her disclosure of her pregnancy and

request for reasonable accommodation in relation to her pregnancy.

77.     Defendant acted in willful and reckless disregard for Plaintiff's protected rights.

78.     As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation and loss of enjoyment of life.

## COUNT III
### Violation of Title VII of the Civil Rights Act
### (Retaliation)

79.     Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

80.     By virtue of the conduct alleged herein, Defendant retaliated against Plaintiff because disclosed her pregnancy and requested reasonable accommodation for her pregnancy, thereby violating the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. ("Title VII").

81.     Plaintiff is a member of a protected class under Title VII, due to Plaintiff's sex and pregnancy.

82.     During Plaintiff's employment with Defendant, Plaintiff disclosed her pregnancy to Defendant and reasonably requested accommodation in relation to her pregnancy.

83.     Plaintiff requested accommodation for her pregnancy on at least three occasions in July and August 2025.

84.     Plaintiff made those requests to her manager, Wilbert Davis, and provided supportive documentation.

85.     As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under Title VII.

86.     In response to Plaintiff's accommodation request, Defendant refused to engage in

9

the interactive process and instead opted to terminate Plaintiff's employment.

87. Plaintiff suffered an adverse employment action in retaliation for engaging in protected activity.

88. Defendant acted in willful and reckless disregard for Plaintiff's protected rights.

89. As a direct and proximate result of the retaliation described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation and loss of enjoyment of life.

<u>COUNT IV</u>
**Violation of the Illinois Human Rights Act, 775 ILCS 5/**
**(Retaliation)**

90. Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

91. By virtue of the conduct alleged herein, Defendant retaliated against Plaintiff because disclosed her pregnancy and requested reasonable accommodation for her pregnancy, thereby violating the Illinois Human Rights Act (775 ILCS 5/) ("IHRA").

92. Plaintiff was a member of a protected class under the IHRA, due to Plaintiff's sex and pregnancy.

93. During Plaintiff's employment with Defendant, Plaintiff disclosed her pregnancy to Defendant and reasonably requested accommodation in relation to her pregnancy.

94. Plaintiff requested accommodation for her pregnancy on at least three occasions in July and August 2025.

95. Plaintiff made those requests to her manager, Wilbert Davis, and provided supportive documentation.

96. As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under the IHRA.

97. In response to Plaintiff's accommodation request, Defendant refused to engage in the interactive process and instead opted to terminate Plaintiff's employment.

98. Plaintiff suffered an adverse employment action in retaliation for engaging in protected activity.

99. Defendant acted in willful and reckless disregard for Plaintiff's protected rights.

100. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation and loss of enjoyment of life.

**COUNT V**
**Violation of the Pregnant Workers Fairness Act**
**(Failure to Accommodate)**

101. Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

102. By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices by failing to accommodate Plaintiff's disability in violation of the Pregnant Workers Fairness Act of 2023, as amended, 42 U.S.C. § 2000gg et seq. ("PWFA").

103. Plaintiff was a member of a protected class under the PWFA, due to Plaintiff's pregnancy.

104. Plaintiff was a qualified employee as defined by the PWFA.

105. Defendant was aware of Plaintiff's pregnancy and her need for accommodation.

106. During Plaintiff's employment with Defendant, Plaintiff disclosed her pregnancy to Defendant and reasonably requested accommodation in relation to her pregnancy.

107. Plaintiff requested accommodation for her pregnancy on at least three occasions in July and August 2025.

108. Plaintiff made those requests to her manager, Wilbert Davis, and provided

11

supportive documentation.

109. Defendant failed to engage in the interactive process to determine the appropriate accommodation after Plaintiff requested reasonable accommodation.

110. Plaintiff's reasonable accommodation that was requested was not an undue burden on Defendants.

111. Temporary task adjustments were feasible within Defendants' operations.

112. Defendant did not accommodate Plaintiff's pregnancy and instead terminated Plaintiff's employment following her request for accommodation.

113. Defendant acted in willful and/or reckless disregard for Plaintiff's protected rights.

114. As a direct and proximate result of the failure to accommodate described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT VI
### Violation of the Illinois Human Rights Act, 775 ILCS5/2-102(J)(1)
### (Failure to Accommodate)

115. Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

116. By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices by failing to accommodate Plaintiff's disability in violation of the Illinois Human Rights Act, 775 ILCS5/2-102(J)(1) ("IHRA").

117. Plaintiff was a member of a protected class under the IHRA, due to Plaintiff's pregnancy.

118. Plaintiff was a qualified employee as defined by the IHRA.

119. Defendant was aware of Plaintiff's pregnancy and her need for accommodation.

120. During Plaintiff's employment with Defendant, Plaintiff disclosed her pregnancy

12

to Defendant and reasonably requested accommodation in relation to her pregnancy.

121.     Plaintiff requested accommodation for her pregnancy on at least three occasions in July and August 2025.

122.     Plaintiff made those requests to her manager, Wilbert Davis, and provided supportive documentation.

123.     In response to Plaintiff's accommodation request, Defendant refused to engage in the interactive process and instead opted to terminate Plaintiff's employment.

124.     Defendant failed to engage in the interactive process to determine the appropriate accommodation after Plaintiff requested reasonable accommodation.

125.     Plaintiff's reasonable accommodation that was requested was not an undue burden on Defendant.

126.     Temporary task adjustments were feasible within Defendant's operations.

127.     Defendant did not accommodate Plaintiff's pregnancy and instead terminated Plaintiff's employment following her request for accommodation.

128.     Defendant acted in willful and/or reckless disregard for Plaintiff's protected rights.

129.     As a direct and proximate result of the failure to accommodate described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

### COUNT VII
**Violation of the Pregnant Workers Fairness Act**
**(Retaliation)**

130.     Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

131.     By virtue of the conduct alleged herein, Defendant retaliated against Plaintiff based on Plaintiff requesting reasonable accommodations related to her pregnancy, thereby violating the

Pregnant Workers Fairness Act of 2023, as amended, 42 U.S.C. § 2000gg *et seq.* ("PWFA").

132. Plaintiff is a member of a protected class under the PWFA due to Plaintiff's sex and pregnancy.

133. Plaintiff was a qualified employee as defined by the PWFA.

134. During Plaintiff's employment with Defendant, Plaintiff disclosed her pregnancy to Defendant and reasonably requested accommodation in relation to her pregnancy.

135. Plaintiff requested accommodation for her pregnancy on at least three occasions in July and August 2025.

136. Plaintiff made those requests to her manager, Wilbert Davis, and provided supportive documentation.

137. As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under the PWFA.

138. In response to Plaintiff's accommodation request, Defendant refused to engage in the interactive process and instead opted to terminate Plaintiff's employment.

139. Plaintiff's reasonable accommodation that was requested was not an undue burden on Defendants.

140. In response to Plaintiff's accommodation request, Defendant refused to engage in the interactive process and instead opted to terminate Plaintiff's employment.

141. Plaintiff suffered an adverse employment action in retaliation for engaging in protected activity.

142. Defendant acted in willful and/or reckless disregard for Plaintiff's protected rights.

143. As a direct and proximate result of the retaliation described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment

benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT VIII
### Violation of the Illinois Human Rights Act, 775 ILCS 5/2-102(I)
### (Retaliation)

144.    Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

145.    By virtue of the conduct alleged herein, Defendant retaliated against Plaintiff based on Plaintiff requesting accommodation, thereby violating the Illinois Human Rights Act, 775 ILCS 5/2-102(I) ("IHRA").

146.    Plaintiff was a member of a protected class under the IHRA due to Plaintiff's pregnancy.

147.    Plaintiff was a qualified employee as defined by the IHRA.

148.    Defendant was aware of Plaintiff's pregnancy and her need for accommodation.

149.    During Plaintiff's employment with Defendant, Plaintiff disclosed her pregnancy to Defendant and reasonably requested accommodation in relation to her pregnancy.

150.    Plaintiff requested accommodation for her pregnancy on at least three occasions in July and August 2025.

151.    Plaintiff made those requests to her manager, Wilbert Davis, and provided supportive documentation.

152.    As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under the IHRA.

153.    Plaintiff's reasonable accommodation that was requested was not an undue burden on Defendants.

154.    In response to Plaintiff's accommodation request, Defendant refused to engage in the interactive process and instead opted to terminate Plaintiff's employment.

155. Plaintiff suffered an adverse employment action in retaliation for engaging in protected activity.

156. Defendant acted in willful and reckless disregard for Plaintiff's protected rights.

157. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation and loss of enjoyment of life.

**COUNT IX**
**Violations of the Pregnancy Discrimination Act**
**(Disparate Treatment)**

158. Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

159. By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based on Plaintiff's sex and pregnancy, in violation of the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000 *et seq.* ("PDA").

160. The PDA prohibits an employer from discriminating against an employee on the basis of pregnancy, childbirth, or related medical conditions. Plaintiff was a member of a protected class under Title VII, due to Plaintiff's sex and pregnancy.

161. Plaintiff was a member of a protected class under the PDA due to Plaintiff's pregnancy.

162. Plaintiff was qualified for their position as a security officer.

163. Ultimately, Defendant terminated Plaintiff's employment on the basis of Plaintiff's sex and pregnancy.

164. Specifically, Plaintiff was terminated following her disclosure of her pregnancy and request for reasonable accommodation in relation to her pregnancy.

165. Defendant acted in willful and reckless disregard for Plaintiff's protected rights.

166.    As a result of Defendant's conduct, Plaintiff suffered damages, including loss of employment, loss of income, loss of employment benefits, mental anguish, financial distress, emotional distress, humiliation, and loss of enjoyment of life.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Honorable Court find in Plaintiff's favor and against Defendant as follows:

    a.  Back pay with interest;

    b.  Payment of interest on all back pay recoverable;

    c.  Front pay;

    d.  Loss of benefits;

    e.  Compensatory and punitive damages;

    f.  Reasonable attorneys' fees and costs;

    g.  Award pre-judgment interest if applicable; and

    h.  Award Plaintiff any and all other such relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests that all issues be submitted to and determined by a jury.

Dated: March 17, 2026.

/s/ *Chad W. Eisenback*
**CHAD W. EISENBACK, ESQ.**
**NATHAN C. VOLHEIM, ESQ.**
**CHASIDY K. CLARK, ESQ.**
**SULAIMAN LAW GROUP, LTD.**
2500 S. Highland Avenue, Suite 200
Lombard, Illinois 60148
Phone: 630-575-8181
ceisenback@atlaslawcenter.com
nvolheim@atlaslawcenter.com
cclark@atlaslawcenter.com
*Counsel for Plaintiff*